157 So. 377

### ORGERON v. LYTLE.

No. 33068.

Oct. 29, 1934.

Milling, Godchaux, Saal & Milling and Nat B. Knight, Jr., all of New Orleans, for relator.

Archie J. Grefer, of Harvey, for respondent.

ODOM, Justice.

John Orgeron brought suit against C. J. Lytle, relator here, to recover $590 alleged to be due on a contract. Orgeron alleged that Lytle was about to leave the state of Louisiana permanently without there being a possibility in the ordinary course of judicial proceedings of obtaining or executing a judgment against him previous to his departure, and that he was about to remove his property permanently from the state. He prayed that a writ of attachment issue and that defendant's property then within the jurisdiction of the court be attached, etc. Code of Practice, art. 240, par. 1.

Orgeron alleged that because of his poverty and lack of means he was unable to pay the present or future costs of the litigation or to give bond to secure the payment thereof, and prayed for an order permitting him to litigate without the payment of costs, as provided in Act No. 156 of 1912, as amended by Act No. 260 of 1918.

He furnished supporting affidavits to show his poverty-stricken condition. Whereupon the judge granted an order authorizing plaintiff to "institute and prosecute this suit without the payment of present or future costs and without giving bond for costs," and further ordered that "a writ of attachment issue herein as prayed for and according to law."

This order was dated April 19, 1934. A writ of attachment was issued on the same day, but the plaintiff furnished no attachment bond as required by article 245 of the Code of Practice; his theory being that the order of court permitting him to litigate without the payment of costs or giving bond to secure the payment thereof relieved him of the necessity of furnishing bond to procure the issuance of the writ of attachment.

The sheriff was unable to find the defendant and, in his returns on the citation, reported that defendant had no known place of residence in the parish. The plaintiff, through counsel, then asked that a curator ad hoc be appointed to represent the defendant, and this was done. All the property that defendant

had in the parish was seized under the writ of attachment, and the service of notice of attachment, as well as citation, was made on the curator ad hoc.

The curator ad hoc for the defendant Lytle then ruled the plaintiff to show cause why the writ of attachment should not be dissolved on the ground that it was issued without the giving of bond and why the suit should not be dismissed for lack of jurisdiction. After hearing it was ordered "that the rule herein taken by defendant on plaintiff on the 14th day of June, 1934, be and the same is hereby denied and that the attachment herein issued remain in full force and effect." Whereupon the curator ad hoc invoked the supervisory powers of this court and asked that the necessary writs be granted, which was done.

The only question presented is whether a plaintiff who is unable to pay costs and who is authorized by the court to litigate without the payment of costs, as provided by Act No. 156 of 1912, as amended by Act No. 260 of 1918, is relieved of the necessity of furnishing bond in order to procure the issuance of a writ of attachment, as required by article 245 of the Code of Practice.

The purpose of the Act of 1912, as amended by Act of 1918, as clearly expressed in its title, is to authorize indigent persons to litigate without the payment of costs. The word "costs," as used in the act, has a well-known meaning. As there used it relates to the expense of legal proceedings and includes only such sums or amounts as are permitted to be charged under the fee bills for specified services rendered. The act makes this perfectly clear. We quote from section 1:

"This right to litigate, including the right to prosecute appeals in the proper courts, without the previous or current payment of costs or without the giving of bonds for the payment of costs shall extend to all the services required by law in legal proceedings of clerks of court, sheriffs, and official stenographers, witnesses, and in the cases where the law provides for a Civil Jury trial, and where the party desires such trial, the services of jurors, and to obtaining copies of notarial acts from public officers and notaries and certificates from public officers in respect to records of their offices."

Clearly the act relates exclusively to the subject-matter of costs or expense of litigation.

There is another and different law which requires creditors to furnish security or bond as a condition precedent to the issuance of a writ of attachment. That law is article 245 of the Code of Practice, which provides that a creditor who prays for an attachment "*must*, besides, annex to his petition his obligation * * * for a sum equal to that which he claims * * * with the surety of one good and solvent person residing within the jurisdiction of the court to which the petition is presented."

The article further provides that where the attachment is prayed for on the sole ground that the defendant resides out of the state, the amount of the attachment bond shall not exceed the amount of the demand and in no event exceed $250. The security or bond *must* be given, and the purpose of the bond is clearly expressed, which is "as a security for the payment of such *damages* as

such defendant may recover against him in case it should be decided that the attachment was wrongfully obtained."

The purpose of the attachment bond being to secure the defendant for the payment of such *damages* as he may sustain on account of the wrongful issuance of the attachment, the question arises whether the amount of damage which may be thus sustained is part of the costs or expense of the litigation. The answer is: "No." The word "costs," as used in Act No. 156 of 1912, as amended by Act No. 260 of 1918, refers exclusively to the fees allowed by law to certain designated persons for services rendered in connection with the litigation. The word "damages," as used in article 245 of the Code of Practice, refers to the recompense which a creditor must make in case he unlawfully causes the attachment of another's property. No rule of construction would warrant the holding that the word "costs," as used in the act, means and includes damages, as referred to in the Code.

In Muller v. Johnson, 140 La. 902, 74 So. 189, 190, an intervener prayed for an injunction without bond, invoking the privilege allowed impecunious persons by Act No. 156 of 1912. Article 304 of the Code of Practice provides that a party applying for an injunction must present a petition therefor to a competent judge "annexing to his petition his obligation in favor of the defendant * * * with the surety of one good and solvent person residing within the jurisdiction of the court, to secure the payment of such damages as may have been sustained by the defendant, in case it should be decided that the injunction had been wrongfully obtained."

The purpose of an injunction bond, as required by article 304 of the Code of Practice, is precisely the same as that of an attachment bond, as required by article 245 of the Code, that is, to secure the payment of damages in case it should be decided that the writ of attachment was wrongfully obtained.

In the Muller Case, supra, this court said:

"It needs no citation of authority to support the conclusion that in said law (referring to Act No. 156 of 1912) the word 'costs' does not include damages."

But the court did cite the case of Howze v. Green, 62 N. C. 250.

The respondent judge clearly erred in his ruling, and his judgment must be set aside.

For the reasons assigned the judgment under review is set aside, and it is now decreed that the writ of attachment herein, which was issued without bond, is null, void, and of no effect and the same is quashed, and it is further ordered that the sheriff forthwith release defendant's property from seizure.